FILED

Anthony A. Patel
11693 San Vicente Blvd.
#461
Los Angeles, CA 90049
Telephone: (424) 350-0123
Facsimile: (310) 943-3829
tony@tonypatel.com

Plaintiff (Pro Se)

2019 JAN -4 PM 1:37

PAID

JAN - 4 2019

Clerk, US District Court
COURT 4612

N/S

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANTHONY A. PATEL,<br><br>   Plaintiff,<br><br>  vs.<br><br>PATRICIA MILLER; JOHANNA KLOHN; LYNNE MCCULLOUGH; GREGORY HENDEY; AKSHAI RUNCHAL; AMIT RUNCHAL; RAKSHA BHATIA; PARUL BHATIA; SUMEET BHATIA; WASSER, COOPERMAN & MANDLES, PC; GLEN BUZARD; ALI FISHBEIN; JORDAN GROTZINGER; GREENBERG TRAURIG LLP; JACQUELINE BOGGS; SIDLEY AUSTIN LLP; YUK LAW; JENNIFER VILLEBRO; SCHMID & VOILES; LAW & BRANDMEYER LLP; JEREMY OSHER; BOREN, OSHER & LUFTMAN LLP; RACHEL | ) Case No.<br>) **CV19-0008**0-CBM-AFMx<br>)<br>) COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) DEMAND FOR JURY TRIAL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1   MCROSKEY; AKERMAN LLP;       )
2   LUKAS ALEXANIAN; DOUGLAS    )
    NIES; BARTLEY BECKER;        )
3   GREGORY LYNCH; LEWIS         )
4   BRISBOIS BISGAARD & SMITH    )
    LLP; JAMES TURKEN; EISNER    )
5   JAFFE; GREENSPOON MARDER     )
6   LLP; DICKSTEIN SHAPIRO LLP;  )
7   INGLIS LEDBETTER & GOWER;    )
    DLA PIPER LLP; JOEL SACHS;   )
8   SILVER LAW GROUP; THE        )
9   PHILLIPS FIRM; DAVID GRIFFIN; )
    BENNER BOON LLP; FRANK       )
10  NEMECEK; CLAUDIA STONE;      )
11  JONATHAN COLE; NEMECEK &     )
12  COLE; SARAH OVERTON;         )
    CUMMINGS, MCCLOREY, DAVIS    )
13  & ACHO; HINSHAW &            )
14  CULBERTSON LLP; FILOMENA     )
    MEYER; DESMOND HINDS;        )
15  MICHAEL TROPE; and DOES 1-10, )
16  inclusive,                   )
                                 )
17                  Defendants.  )
18                               )
19  _____  )

20      **COMES NOW**, Plaintiff, ANTHONY A. PATEL, an individual

21  ("Plaintiff"), who alleges continuing and ongoing violations of his civil rights,

22  political rights, international legal rights and basic human rights as well as other

23  associated and related grievances, as follows:

24                      **JURISDICTION AND VENUE**

25      1.      This Court has original jurisdiction over the matters alleged in this

26  Complaint (hereinafter, the "Complaint") pursuant to § 1331 of the U.S. Code.

27  Certain of the matters in controversy in this Complaint arose under the United

28  States Constitution, laws or treaties of the United States.  The Court also has

original jurisdiction over matters alleged in the Complaint pursuant to civil claims made by Plaintiff under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and the United States Constitution. In addition, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343, because the action seeks redress relating to deprivation of Plaintiff's rights, privileges and immunities under applicable federal laws.

2. This Court has supplemental jurisdiction (pursuant to § 1367 of the U.S. Code), to the extent necessary, over other claims asserted herein, as such claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue lies before this Court for the Complaint, because: (a) the matters alleged in the Complaint, including the injuries alleged, occurred in the County of Los Angeles in the State of California, which is in the Western Division of the Central District of California; (b) contracts referenced in the Complaint were entered into and performed in the County of Los Angeles in the State of California, which is in the Western Division of the Central District of California; (c) obligations and liabilities of Defendants alleged in the Complaint arose in the County of Los Angeles in the State of California, which is in the Western Division of the Central District of California; and (d) the transactions, acts, practices and conduct constituting violations of the laws alleged herein occurred in the County of Los Angeles in the State of California, which is in the Western Division of the Central District of California.

## PARTIES

4. Plaintiff (or "Patel") is an individual. He is currently a resident of Los Angeles County, which is located in the State of California. Plaintiff was born in Los Angeles, California and is a natural-born American citizen of Asian ancestry (his parents legally immigrated to the United States in the early 1970s).

5.     Defendant PATRICIA MILLER, an individual ("Miller"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at the UCLA Risk Management Office, 10920 Wilshire Blvd., Los Angeles, CA 90024.  Miller is an employee, officer, partner, principal, servant and/or agent of the State of California.

6.     Defendant JOHANNA KLOHN, an individual ("Klohn"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at the UCLA Risk Management Office, 10920 Wilshire Blvd., Los Angeles, CA 90024.  Klohn is an employee, officer, partner, principal, servant and/or agent of the State of California.

7.     Defendant LYNNE MCCULLOUGH, an individual ("McCullough"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at 757 Westwood Plaza, Los Angeles, CA 90024.  McCullough is an employee, officer, partner, principal, servant and/or agent of the State of California.

8.     Defendant GREGORY HENDEY, an individual ("Hendey"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 924 Westwood Boulevard, Suite 300, Los Angeles, California 90095. Hendey is an employee, officer, partner, principal, servant and/or agent of the State of California.

9.     Defendant AKSHAI RUNCHAL, an individual ("Akshai"), does, and at all times mentioned in this Complaint did, maintain his principal place of residence in Los Angeles County, California, with his principal place of residence located in Los Angeles, CA.

10. Defendant AMIT RUNCHAL, an individual ("Amit"), does, and at all times mentioned in this Complaint did, maintain his principal place of residence in Los Angeles County, California, with his principal place of residence located in Los Angeles, CA.

11. Defendant RAKSHA BHATIA, an individual ("Raksha"), does, and at all times mentioned in this Complaint did, maintain her principal place of residence in Los Angeles County, California, with her principal place of residence located in Los Angeles, CA.

12. Defendant PARUL BHATIA, an individual ("Parul"), does, and at all times mentioned in this Complaint did, maintain her principal place of residence in Los Angeles County, California, with her principal place of residence located in Los Angeles, CA.

13. Defendant SUMEET BHATIA, an individual ("Sumeet"), does, and at all times mentioned in this Complaint did, maintain his principal place of residence in Los Angeles County, California, with his principal place of residence located in Los Angeles, CA.

14. Defendant WASSER, COOPERMAN & MANDLES, PC, a professional law corporation ("Wasser"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 2049 Century Park East, Suite 800, Los Angeles, CA 90067.

15. Defendant GLEN BUZARD, an individual ("Buzard"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 11611 San Vicente Blvd., #820, Los Angeles, CA 90049.

16. Defendant ALI FISHBEIN, an individual ("Fishbein"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business

1  located at 11611 San Vicente Blvd., #820, Los Angeles, CA 90049.

2      17.   Defendant JORDAN GROTZINGER, an individual

3  ("Grotzinger"), does, and at all times mentioned in this Complaint did, maintain

4  his principal place of business in Los Angeles County, California, with his

5  principal place of business located at 1840 Century Park East, Suite 1900, Los

6  Angeles, CA 90067. Grotzinger is an employee, officer, partner, principal,

7  servant and/or agent of Greenberg.

8      18.   Defendant GREENBERG TRAURIG LLP, a limited law

9  partnership ("Greenberg"), does, and at all times mentioned in this Complaint

10  did, maintain its principal place of business in Los Angeles County, California,

11  with its principal place of business located at 1840 Century Park East, Suite

12  1900, Los Angeles, CA 90067.

13      19.   Defendant JACQUELINE BOGGS, an individual ("Boggs"), does,

14  and at all times mentioned in this Complaint did, maintain her principal place of

15  business in Los Angeles County, California, with her principal place of business

16  currently located at 555 West 5th St., Floor 40, Los Angeles, CA 90013. Boggs

17  is an employee, officer, partner, principal, servant and/or agent of Sidley.

18      20.   Defendant SIDLEY AUSTIN LLP, a limited liability partnership

19  ("Sidley"), does, and at all times mentioned in this Complaint did, maintain its

20  principal place of business in Los Angeles County, California, with its principal

21  place of business located at 555 West 5th St., Floor 40, Los Angeles, CA 90013.

22      21.   Defendant YUK LAW, an individual ("Yuk"), does, and at all

23  times mentioned in this Complaint did, maintain his principal place of business

24  in Los Angeles County, California, with his principal place of business located

25  at 2 N. Lake Avenue, Suite 820, Pasadena, CA 91101. Yuk is an employee,

26  officer, partner, principal, servant and/or agent of Brandmeyer and Schmid.

27      22.   Defendant JENNIFER VILLEBRO, an individual ("Villebro"),

28  does, and at all times mentioned in this Complaint did, maintain her principal

place of business in Los Angeles County, California, with her principal place of business currently located at 333 S. Hope Street, #900, Los Angeles, CA 90071. Villebro is an employee, officer, partner, principal, servant and/or agent of Brandmeyer and Schmid.

23.     Defendant SCHMID & VOILES, a law firm partnership ("Schmid"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 333 S. Hope Street, #900, Los Angeles, CA 90071.

24.     Defendant LAW & BRANDMEYER, LLP, a limited liability partnership ("Brandmeyer"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 2 N. Lake Avenue, Suite 820, Pasadena, CA 91101.

25.     Defendant JEREMY OSHER, an individual ("Osher"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 222 N. Sepulveda Blvd. #2222, El Segundo, CA 90245.  Osher is an employee, officer, partner, principal, servant and/or agent of Boren.

26.     Defendant BOREN, OSHER & LUFTMAN LLP, a limited liability partnership ("Boren"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 222 N. Sepulveda Blvd., #2222, El Segundo, CA 90245.

27.     Defendant RACHEL MCROSKEY, an individual ("McRoskey"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business currently located at 601 West 5th Street, Suite 300, Los Angeles, CA 90071.  McRoskey is an employee, officer, partner, principal, servant and/or

1  agent of Boren and Ackerman.

2      28.    Defendant AKERMAN LLP, a limited liability partnership

3  ("Akerman"), does, and at all times mentioned in this Complaint did, maintain

4  its principal place of business in Los Angeles County, California, with its

5  principal place of business located at 601 West 5th Street, Suite 300, Los

6  Angeles, CA 90071.

7      29.    Defendant LUKAS ALEXANIAN, an individual ("Alexanian"),

8  does, and at all times mentioned in this Complaint did, maintain his principal

9  place of business in Los Angeles County, California, with his principal place of

10  business located at 1560 East Chevy Chase Drive, Suite 130, Glendale, CA

11  91206.  Alexanian is an employee, officer, partner, principal, servant and/or

12  agent of the State of California.

13      30.    Defendant DOUGLAS NIES, an individual ("Nies"), does, and at

14  all times mentioned in this Complaint did, maintain his principal place of

15  business in Los Angeles County, California, with his principal place of business

16  located at 1530 East Chevy Chase Drive, #209, Glendale, CA 91206.  Nies is an

17  employee, officer, partner, principal, servant and/or agent of the State of

18  California.

19      31.    Defendant BARTLEY BECKER, an individual ("Becker"), does,

20  and at all times mentioned in this Complaint did, maintain his principal place of

21  business in Los Angeles County, California, with his principal place of business

22  located at 633 West 5th Street, #4000, Los Angeles, CA 90071.  Becker is an

23  employee, officer, partner, principal, servant and/or agent of Lewis.

24      32.    Defendant GREGORY LYNCH, an individual ("Lynch"), does,

25  and at all times mentioned in this Complaint did, maintain his principal place of

26  business in Los Angeles County, California, with his principal place of business

27  located at 633 West 5th Street, #4000, Los Angeles, CA 90071.  Lynch is an

28  employee, officer, partner, principal, servant and/or agent of Lewis.

33.    Defendant LEWIS BRISBOIS BISGAARD & SMITH LLP, a limited liability partnership ("Lewis"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 633 West 5th Street, #4000, Los Angeles, CA 90071.

34.    Defendant JAMES TURKEN, an individual ("Turken"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business currently located at 1875 Century Park East, Suite 1850, Los Angeles, CA 90067.  Turken is an employee, officer, partner, principal, servant and/or agent of Eisner, Greenspoon and Dickstein.

35.    Defendant EISNER JAFFE, a law firm ("Eisner"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 9601 Wilshire Blvd., #700, Beverly Hills, CA 90210.

36.    Defendant GREENSPOON MARDER LLP, a limited liability partnership ("Greenspoon"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 1875 Century Park East, Suite 1850, Los Angeles, CA 90067.

37.    Defendant DICKSTEIN SHAPIRO LLP, a limited liability partnership ("Dickstein"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 2049 Century Park East, Los Angeles, CA 90067.

38.    Defendant INGLIS LEDBETTER & GOWER, a law firm ("Inglis"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal

place of business located at 500 S. Grand, Suite 1400, Los Angeles, CA 90071.

39.     Defendant DLA PIPER LLP, a limited liability partnership ("Piper"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 550 South Hope Street, Suite 2400, Los Angeles, CA 90071.  Piper is the acquirer of a law firm named Liner, a limited liability partnership.

40.     Defendant JOEL SACHS, an individual ("Sachs"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business currently located at 212 26th Street, Suite 333, Santa Monica, CA 90402.  Sachs is an employee, officer, partner, principal, servant and/or agent of Silver.

41.     Defendant SILVER LAW GROUP, a professional law corporation ("Silver"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business currently located at 212 26th Street, Suite 333, Santa Monica, CA 90402.

42.     Defendant THE PHILLIPS FIRM, a law firm ("Phillips"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at  800 Wilshire Blvd., #1550, Los Angeles, CA 90017.

43.     Defendant DAVID GRIFFIN, an individual ("Griffin"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in San Diego County, California, with his principal place of business currently located in Escondido, CA.  Griffin is an employee, officer, partner, principal, servant and/or agent of Benner Boon.

44.     Defendant BENNER BOON LLP, a limited liability partnership, also known as (aka) Next Law Group or The Benner Law Firm or The Boon

Law Firm (together, and collectively, known as "Benner Boon"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in San Diego County, California, with its principal place of business located 411 Camino Del Rio S., San Diego, CA 92108.

45.   Defendant FRANK NEMECEK, an individual ("Nemecek"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 16255 Ventura Blvd., #300, Encino, CA 91436.   Nemecek is an employee, officer, partner, principal, servant and/or agent of N&C.

46.   Defendant CLAUDIA STONE, an individual ("Stone"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at 16255 Ventura Blvd., #300, Encino, CA 91436.   Stone is an employee, officer, partner, principal, servant and/or agent of N&C.

47.   Defendant JONATHAN COLE, an individual ("Cole"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 16255 Ventura Blvd., #300, Encino, CA 91436.  Cole is an employee, officer, partner, principal, servant and/or agent of N&C.

48.   Defendant NEMECEK & COLE, a law firm ("N&C"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 16255 Ventura Blvd., #300, Encino, CA 91436.

49.   Defendant SARAH OVERTON, an individual ("Overton"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at 3801 University Ave., Suite 560, Riverside, CA 92501.  Overton is an employee, officer, partner, principal, servant and/or agent of Cummings.

50.     Defendant CUMMINGS, MCCLOREY, DAVIS & ACHO, a law firm ("Cummings"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 3801 University Ave., Suite 560, Riverside, CA 92501.

51.     Defendant HINSHAW & CULBERTSON LLP, a limited liability partnership ("Hinshaw"), does, and at all times mentioned in this Complaint did, maintain its principal place of business in Los Angeles County, California, with its principal place of business located at 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025.

52.     Defendant FILOMENA MEYER, an individual ("Meyer"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025.  Meyer is an employee, officer, partner, principal, servant and/or agent of Hinshaw.

53.     Defendant DESMOND HINDS, an individual ("Hinds"), does, and at all times mentioned in this Complaint did, maintain her principal place of business in Los Angeles County, California, with her principal place of business located at 11601 Wilshire Blvd., Suite 800, Los Angeles, CA 90025.  Hinds is an employee, officer, partner, principal, servant and/or agent of Hinshaw.

54.     Defendant MICHAEL TROPE, an individual ("Trope"), does, and at all times mentioned in this Complaint did, maintain his principal place of business in Los Angeles County, California, with his principal place of business located at 12121 Wilshire Blvd., #1325, Los Angeles, CA 90025.

55.     Any and every employee, officer, partner, principal, servant and/or agent of the State of California (or any of its affiliates, subdivisions, entities, subsidiaries or subgroups) who is a Defendant is sued in both the individual and official capacities, respectively, to the maximum extent under applicable law.

56.     The true names and capacities of Defendant Does 1 through 10 (each, a "Doe Defendant", and collectively and together, "Doe Defendants") are unknown to Plaintiff, and therefore Plaintiff sues each of them by such fictitious names.   Plaintiff will seek leave of the Court to insert the true names and capacities of each Doe Defendant as and when the same are ascertained. Plaintiff is informed and believes that each Defendant was an employee, agent, partner and/or servant of the other Defendants, with knowledge of events and actions alleged herein, and that each was acting within the course and scope of their respective authority and within the consent of each other Defendant, regarding certain allegations herein.

## **RELEVANT HISTORY**

57.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 56, inclusive and as stated above.

58.     Patel met Sonya Bhatia ("Bhatia"), who is a California lawyer in late 2003.   He was 26, she was 30.   They became friends.   Bhatia insisted in 2006 that they get married, since neither of them had been previously married and Bhatia wanted to have children.   Patel eventually agreed to give marriage a try with Bhatia, since they were friends and had a lot in common.   For example, Bhatia was an active lawyer in California since the 1990s and Patel (while not in active law practice at the time) was educated in law at Berkeley and Harvard.

59.     Patel proposed Bhatia with marriage on the footsteps the United States Supreme Court in Washington, District of Columbia, in or about Labor Day 2006.   His only request of Bhatia when he made the proposal was that he wanted to someday have a career in government and public service, and he asked if she could be supportive.   She stated that she would be very supportive. She accepted the proposal and the parties were later married.

60.     During the marriage, Patel and Bhatia had two minor children: a son ("R") born 2009 and daughter ("K") born 2011.   Patel, who was previously

very dedicated to his professional career (often working 80-100/hour weeks in corporate law, investment banking and then as a corporate executive), turned his focus and attention to the care of his children.  He spent many nights up with the babies, he changed countless diapers, he took the kids to pre-school, he went on play-dates with the children, he organized kids' activities and he frequently spent more time with both children than Bhatia did during the marriage.  It was a significant sacrifice to Patel's own professional career, but one that he was gladly willing to make in order to help raise his very young children.  During this time, Patel went back into law in private practice as an attorney, working at night often from a home office in order to help support the family.

61.    Following the Election of 2012 (November 2012), Patel informed Bhatia that he wanted to switch gears and turn his attention to a career in politics, government or public service.  He felt that the kids would be old enough and be ready for full-time school schedules in a couple of years.  And Patel told Bhatia that he felt that the country was further divided than it had been in recent history, that our global standing seemed to still be in shambles after the war in Iraq, and that our foreign policy seemed to be going further adrift.  He felt that he had a reasonable chance at an election campaign for Congress in 2014, because he felt that the incumbent congressman was retiring and that an open seat would be a fair opportunity to make a first election foray.

62.    Bhatia opposed any election campaign by Patel.  The parties kept arguing into 2013.  Bhatia stated that if Patel had more free time in the future as the children grew older, she wanted him to make as much money as possible for Bhatia and that Patel should skip government and public service altogether (since there was not enough money in that type of career).  Bhatia's family also weighed in on these discussions.  By spring 2013, after numerous arguments and family discussions, Patel finally decided that he wanted to separate, obtain a divorce and move on.  By June 2013, Patel did not think that there was any way

to avoid splitting up, since the differences were irreconcilable.  He asked Bhatia to work something reasonable out with him in order to avoid protracted divorce court litigation so that they could both part ways and move forward in their respective lives as friends.  But Bhatia would not cooperate, indicating that she wanted Patel out of the lives of the children if he was going to file for a divorce.

63.     Bhatia's own family (led by Bhatia's mother, Raksha, Bhatia's maternal uncle and his son, Akshai and Amit, Bhatia's brother, Sumeet, and his wife, Parul) tried to convince Patel not to divorce Bhatia.  They pointed out that Bhatia herself had been abandoned by her father when she was just a child.  Apparently, Bhatia's mother (Raksha) had always claimed since the time of their divorce in about 1980 that Bhatia's father was mentally ill as a way of explaining why Bhatia's father was no longer in Bhatia's life and also to explain why Bhatia's parents had split up in or about 1980.

64.     By May 2013, it appeared certain that Bhatia and Patel were on the verge of divorce.  Patel continued to have discussions with Bhatia's family, i.e. he met or spoke to Bhatia's brother (Sumeet), her mother (Raksha), her uncle (Akshai), her cousin (Amit) and her sister-in-law (Parul).    These family members professed a desire to help Patel and Bhatia in their process of splitting up.  Later once the separation started in June 2013, they decided to take Bhatia's side.   Her objective was to punish Patel for the divorce by labeling him as mentally ill (as was the case for her own father who divorced her mother) and trying to sideline any prospect of a career in electoral politics, public service or government for Patel.  Bhatia's family, who had been friendly and supportive to Patel, up to June 2013, apparently decided that they had to take Bhatia's side rather than remain on Patel's side and that of the truth.  Sadly, as was the case in about 1980 for Bhatia herself (due to her own mother's choices back then), Bhatia decided by June 2013 to have Patel labeled as mentally ill since she thought that doing so would be in the best interests of R and K (her children).

65.     Bhatia, whose parents divorced in or about 1980, was raised by a single mother (Raksha).  Bhatia's family (led by Raksha and Akshai) publicized that Bhatia's father had a mental illness in order to explain why Raksha was divorced and raising the children alone in 1980s.  Bhatia suffered tremendously during this time, including a teenage pregnancy and a drug and alcohol problem.

66.     At the time that Patel was splitting up from Bhatia in or about June 2013, Bhatia threatened to force R and K to be raised in the same manner.  Patel was upset and sad and requested before the divorce started that the parties share equal custody and equal time of the children in the divorce.  Once the divorce started, both Bhatia and her family refused this equal sharing of the children. Bhatia also threatened Patel that he would never have a political career or any other significant career in public service if he chose to get a divorce from her. She further suggested that because she is a mother and a member of the State Bar of California since the late 1990s, nobody would take Patel seriously and that California lawyers, judges, courts and government agencies would always take her side (because she is a mother and a longtime attorney who is female).

67.     With the divorce appearing imminent, Bhatia's family devised a devious plan starting in or about June 2013 in order to not only alienate Patel from his children, but also to ruin any prospect of his political career.  Their goal, which was malicious, was to ruin Patel's reputation and also to harm him both in his career and as a professional, in hopes that he would either leave the State or give up his kids and his entire career and life in shame.  This plan, which was apparently hatched in June 2013, has been ongoing, continuing into 2018, and serves to cause severe and persistent damage, trauma and Patel to date and will likely do so in to the future.  After 2016, Bhatia and her family now brand Patel as a mentally ill "dead-beat dad" and also tell the children (R and K) that "your dad" (Patel) is a "worse human being than Donald Trump" (even though in truth Patel is probably more aligned with the Democratic party).

# APPLICABLE BACKGROUND

68.     In the afternoon of June 14, 2013, Bhatia experienced a severe form of nervous breakdown.  Patel had informed her earlier that morning that he wanted to file for divorce the following week.  Bhatia had informed her family of this new development that afternoon and let them know Patel was moving forward in the next couple of days probably with divorcing her.

69.     By the evening of June 14, 2013, Bhatia's family told Bhatia to head down to the emergency room ("ER") at UCLA Medical Center in Los Angeles, California, but not to admit herself as a patient until Patel arrived.  Her brother, Sumeet, accompanied Bhatia and they made their way over to the ER.  Separately, Raksha invited Patel over to her residence in West Los Angeles to try and discuss Bhatia's condition and the impending divorce.

70.     On the night of June 14, 2013, while Patel was at Raksha's home discussing family matters (as Raksha had requested), Parul, a licensed medical doctor, called the ER.  She explained that she was a physician and that her sister-in-law's husband (Patel) would be coming in and needed help.  She may have informed the ER that Patel was divorcing his wife (and mother of his two children) and appeared to be mentally unstable for wanting a divorce from her.  On information and belief, Parul may have also suggested that Patel would not voluntarily seek any help or treatment, and so the ER should instead inform Patel that Bhatia was the patient in order to get him evaluated and treated since it might be dangerous for a divorced man to be campaigning for elected office.

71.     By about 9:30 p.m. on June 14, 2013, Bhatia and Sumeet were at the ER and spoke by phone to Patel (who was at Raksha's home).  Bhatia and Sumeet (as guided by Parul and Akshai) were adamant that Bhatia was having a nervous breakdown and that Patel needed to come down to the ER and support her.  When Patel objected, they indicated that he should come down and "support" Bhatia as the children's mother even though he was divorcing her.

72.     Patel and Raksha drove to the ER on the night of June 14, 2013. Once at the ER, Patel who thought he was there to support Bhatia, was instead confined by the ER, placed with security and forced to undergo mental health testing, evaluation and treatment as a patient.  Patel never asked to be a patient in the ER nor did he consent to any form of his evaluation, treatment or holding as a patient in the ER.  However, the ER staff blindly believed Bhatia's story that Patel was instead the one who was mentally unsound and that Patel was experiencing a mental breakdown because he wanted to get a divorce.  Patel asked to leave the ER, but he was not allowed to leave until several doctors and nurses examined him and apparently tried to treat him, based on complaints that Bhatia and her family made to the ER about Patel.  At no time was Patel's own family ever contacted, and when the ER contacted Patel's close friend (also a physician) the ER staff was clearly told by Patel's friend that there was nothing wrong with Patel, but rather Patel and Bhatia were just having marital issues and amidst separation and divorce.  The ER staff chose to ignore Patel's friend.

73.     The ER staff then took further note of the fact that Patel seemed to want to plan an election campaign for Congress in 2014.  The ER staff viewed Patel's ambitions as lofty, grandiose and unhealthy for a 36-year old man with two young children.  His goals and aspirations were viewed as inconsistent with the prestige of Congress (or the Senate), as one of the medical doctors opined. As a young man of minority descent, a doctor also remarked that Patel seemed to lack the stature to be a leader of any real type.  Another expert doctor later suggested that Patel was not ready for the types of things that he was talking about (being elected as a Congressman in 2014 and maybe even a something more someday in the future).

74.     The ER staff also blindly agreed with Bhatia that Patel should be focused on just doing what his children's mother (Bhatia) considers to be best for their children, not what Patel thinks is best for them.  When Patel explained

that he was hoping to campaign, not only for the best interests of his own children, but on a Democratic platform for the success and betterment of the next-generation of all young Americans, the ER staff apparently documented his political views and ambitions as completely deranged, delusional and/or suffering from a mania disorder of an unsound mental faculty.  The longer that Patel protested his being forced to sit in the ER, the worst the ER staff treated him.  Finally, Patel was given a choice in the morning of June 15, 2013: he had to either sign a form consenting to his being a patient in the ER or he would be involuntarily admitted for further treatment, testing, evaluation for 2 or 3 more days.  He was not given any opportunity to speak to a lawyer nor given the chance to leave.  So, Patel signed the forms and got out of the ER as soon as possible in order to escape what was clearly an egregious violation by medical doctors and nurses in the ER of his medical and privacy rights.

75.    However, leaving the ER was not so simple for Patel.  Bhatia and her family specifically requested that the ER make a written notation that Patel is not mentally sound, so as to use against him in the divorce matter and also to prevent him from ever holding any form of elected office.  On information and belief, Patel alleges that Bhatia and her very wealthy family threatened to sue the ER or pressured the ER staff.  The ER gave in to Bhatia's demands and on Patel's discharge paperwork included a note that he was diagnosed as suffering a mental illness (consisting apparently of a mood disorder).  Even *arguendo* if this diagnosis was correct, any reasonable person could also conclude that Patel was very irritated at the idiocy of being held, evaluated and treated as a patient against his will based on false allegations of the wife he was divorcing and her family.  However, Defendants instead seek to portray Patel as mentally ill.

76.    Patel is informed and believes that part of his mistreatment also occurs from the fact that Bhatia's family is enormously wealthy, with millions of dollars held here and overseas.  Patel is informed and believes that they have

millions of dollars in foreign accounts, some of which may not even be reported. But, due to the fact that they are so affluent and well-connected, they seem to be able to get away with this type of stuff. Patel is also informed and believes that part of why Bhatia's family was opposed to Patel's election campaign is that if he divorced Bhatia and won an election, the process might expose undeclared financial accounts or assets owned by Akshai, Raksha, Sumeet, Parul and/or Amit overseas. In order to avoid such scrutiny to their hidden wealth and offshore assets, these family members of Bhatia were further motivated to defame, disparage and harm Patel. They continue to work with State of California public officials over the past several years to ruin Patel's life.

77. The incident that occurred in the ER beginning on the night of June 14, 2013 is not the direct subject of this instant Complaint. Rather, the ER doctors and nurses involved that night in the ER were the subject of a separate civil lawsuit that Patel filed in State court in California (case BC 548 778, filed in June 2014 in the Superior Court of California, County of Los Angeles, currently pending on appeal before the California Court of Appeal). This case is not a rehash or related to the allegations in that State case. Instead, this Complaint is about 50 Defendants, which include other California public officials, lawyers and people who have repeatedly and continuously violated Patel's civil, political, international legal and human rights on an ongoing basis into the present year (2019) based on the ER diagnosing Patel as being moody during his divorce. These Defendants instead refer to Patel as "mentally ill" and are intent on doing one thing: harming Patel's career and his ability to succeed, both for himself (and his children) and for the society in which we live. It is a clear and egregious abuse by California officials, lawyers and others who perceive that Patel must carry the stigma of being labeled as mentally ill because he divorced his wife and the mother of his two children. But the very reason that Patel divorced her was because she was not on the same page about

Patel's career.  So, for lawyers or California public officials to continue to maintain the illusion that Patel is, ever was or could be mentally ill on such a basis of facts, is not only preposterous, but a direct affront to the very basic concepts of liberty and justice that all Americans hold dear.  The facts of this case demonstrate a grotesque and pernicious abuse of power by the Defendants, which is exactly what the Constitution, by its design, seeks to prevent.

### SUMMARY OF FACTS

78.    Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 77, inclusive and as stated above.

79.    Miller is a registered nurse and active member of the State Bar of California.  Along with her immediate supervisor (Klohn), she is overseeing matters relating to Patel on behalf of the State of California.  She has clear evidence of how Patel has been mistreated, based on his gender, race, ethnicity and his marital status.  Yet, the discrimination by Miller and Klohn has continued.  They want to prevent Patel from succeeding in his legal career and are also using this incorrect diagnosis by the ER as a way to block Patel from holding any elected office (or campaigning for office) or of being in any other form of significant public service.  As career bureaucrats (which Miller and Klohn are), they are profiting handsomely at the public's expense by continuing to instill the fallacy that Patel is mentally ill rather than being intelligent. Despite numerous requests to Miller (and Klohn) (most recently in 2018) to correct Patel's medical records and files, they have resisted and instead wasted hundreds of thousands of dollars on legal fees simply to maintain the position that they are right because they represent the State of California.  Hopefully, since California is under new leadership starting next week, Miller and Klohn may consider not violating Patel's rights simply because he is divorced and also was raised by divorced parents.  Indeed, the incoming Governor of California next week was also raised by divorced parents, and prior to his current marriage,

he was also himself divorced.  The discrimination by Miller and Klohn, on behalf of California, against Patel is altogether sad and ironic because the ER itself is named for Ronald Reagan (who was America's only divorced president prior to the current president, Donald Trump).  But the fact is these two ladies (Miller and Klohn) continue to discriminate against Patel and to perpetrate ongoing and unfair violations of Patel's rights using State power and authority.

80.    McCullough and Hendey are the executives in charge of the ER. Despite numerous requests by Patel to cooperate and to assist him in cleaning up the mistreatment of Patel that has occurred (most recently in 2018), these two executives have turned a blind eye to Patel.  McCullough, in particular, who was deposed (but not sued in the State court action), is well-aware of the abuse by her doctors and nurses in the ER.   And she is also aware of the incorrect diagnosis and its continued harmful effects on Patel, his children and his career. Simply allowing a wrong diagnosis to stand is not healthcare, it is public agencies hiding behind lawyers rather than doing the right thing (which is what most Americans expect from their government).  Plaintiff alleges an abuse of power by California government officials.  Both of these executives are aware that Patel was singled out for improper treatment in the ER based on his divorce, his ancestry and ethnic origin, his age, ethnicity and other personal factors which were somehow deemed to be unworthy for an electoral candidate. It is improper for McCullough and Hendey to let this diagnosis stand in their efforts to apparently protect their jobs or careers from regulatory oversight.

81.    Wasser, who has written several books on family law and divorce, appears not to actually follow what the law firm publishes in the public record. In particular, Bhatia approached Wasser with this divorce matter in 2013. Rather than focus on the divorce, Wasser instead suggested to Bhatia that she make an issue out of Patel's mental health in order to hamstring any attempts that he might make at any form of a political career or significant public service

function.  Wasser's goal was not about family law or the best interests of the minor children, but rather the objective was to cause injury to Patel and his ability to parent or succeed in his career by publicizing that Patel was suffering mental issues.  When Patel pointed this issue out to an associate of Wasser (Ms. Klein), she became worried.  Plaintiff alleges, on information and believe, that Wasser then turned to Buzard for help with this situation.  Buzard took over that objective, and with the assistance of Fishbein, focused over the next several years on using Bhatia as a way to create obstacles in Patel's career.  Plaintiff is informed and believes that these individuals may disagree with Patel's political and other campaign views.  For example, and without any limitation, Patel is a divorced father of two minor children who wants and believes that he should have at least equal time and equal custody with his children.  Patel believes that is customarily in the best interests of most children in divorces for both of their parents to be involved in their respective lives (where possible), and many States around our country also agree with Patel even though California is behind the trend towards shared custody and equal parenting (i.e. since California historically prefers mothers first, whereas Patel is advocating putting kids first).

82.    Despite numerous threats by Buzard, Fishbein and their colleagues (which also then included Boggs and Sidley), Patel has never changed his basic position.  Patel continues to believe that the correct agenda for America in the future is "Kids First" not merely mothers (or fathers) first.  But, because Buzard and Fishbein insist on mothers first, as they claim California policy favors such an outcome, they have used every tool possible to depict Patel as mentally deranged, ill, unsound and unable to be a parent, professional or public servant of any form.  Because Patel has continued to stick to his principles, colleagues of Buzard have threatened him saying that their partner is married to Grotzinger and that Patel will be punished and ostracized in the legal community across southern California.  And, indeed, Grotzinger and his law firm, Greenberg, have

done so over the past few years, forcing Patel (at one point to even leave California and try and make a new life in Nevada).   Both Grotzinger and Greenberg (along with Wasser, Buzard, Fishbein, Boggs and Sidley) have depicted Patel wrongly.   These efforts appear to be portrayed in conspiracy with, or in reliance on and partnership, with California public officials.

83.   The abuse, which began with Klohn and Miller and continues to date, has been furthered through the assistance of Yuk and Villebro and their respective employers Schmid and Brandmeyer.   These Defendants continue to use every opportunity available to brand Patel as mentally unsound, unfit, and incompetent.   They are improperly using the system of government and laws that are in place to rebuke Patel and to sideline him and create obstacles to his ability to parent or succeed as a professional.   At one point, in or about October 2016, both Yuk and Villebro appeared to want to be reasonable.   Patel even indicated to them that their behavior in the name of the law (and on behalf of the State of California) appeared ridiculous, and it would be viewed as such by *either* the Obama administration or the incoming Trump administration (which Patel expected would be the next one).   But, Yuk and Villebro changed their tune adopting the position that separation of powers and federalism allows them to continue to violate Patel's rights.   Simply because Yuk and Villebro and their employers work for the State of California is not an excuse for them to not follow the law or their basic duties of professional conduct.   Nor can they continue to use their privilege and power to violate the rights of Patel or any other similarly situated individual citizen on the theory that they are "just doing their jobs" – however, their job of portraying Patel in a negative light is wholly inconsistent with Patel's civil and other rights.

84.   Osher and McRoskey, in particular, have been guilty of some of the very worst perpetration of abuses upon Patel based on the allegation by Bhatia and her family that Patel is mentally unfit and unsound.   Osher has

repeatedly threatened and berated Patel, one time following him into a bathroom and yelling at Patel and another time mocking Patel on the street. Moreover, he has followed Patel around and badgered Patel. Not to be outdone, McRoskey has disparaged Patel on the basis that he is mentally ill and sought to forestall his ability to succeed either as private sector professional or in government or public service. Osher, in particular, has very negative feelings toward President Trump and broadcasts them on a regular basis across social media. Although Patel is more of a Democrat, he supports the President because the President is the current Commander-in-Chief and deserves basic respect on that basis (especially when the country is at, or near, the brink of war), and especially from lawyers and others who purport to represent upstanding moral character. Osher took a personal dislike to Patel on that basis as well and has stated on the record that he wants to ensure that Patel fails in his career and has worries that any lawyer, court or other citizen could take a guy like Patel seriously or allow Patel to ever succeed. Osher's personal vendetta against Patel, and also that of McRoskey and their employers Boren and Akerman, has been fueled by derelict public officials from the State of California such as Miller, Klohn, McCullough and others. These Defendants have no concern for what is right or wrong, or any concern for their State or Country succeeding in the future – rather, their agenda is simply to put themselves first, which is inconsistent with the duties of either public officials or lawyers. In that the current President (Trump) has rebuked the bureaucracy of California, it appears that he may indeed have a point, at least when looking at the behavior of the Defendants in this civil case.

85.    Alexanian and Nies are agents or associates working for the State of California. Rather than doing their jobs, they have instead been focused on finding ways to disparage and rebuke Patel. Plaintiff alleges that they have bias and a pre-existing discriminatory mindset against Patel. For example, and without limitation, Nies has gone out of his way to point out that Patel is not

very bright nor that Patel has the abilities or qualifications to be a lawyer. Further, Alexanian has repeatedly sought to prevent Patel from succeeding in his career, most notably in any type of a career in government or public service. Specifically, Alexanian who is an immigrant to America from the former U.S.S.R disagreed strongly with Patel's view that the end of the Cold War was a direct result of the United States' foreign policy efforts over the preceding 45 years.   Alexanian made a point of using Patel's viewpoints as a basis for insisting that Patel is indeed mentally ill and incompetent.  However, political and legal history, as well as the presidency of the late (but great) George H.W. Bush (and his many predecessors in the White House since 1945) indicate it is actually Alexanian, Nies and their California public employer who fail to understand reality or grasp the basic concepts of American (or world) history. Their simple explanation instead is that Patel is mentally ill.  They use that label since they have no interest in dealing with issues any more complex than their next easy paycheck from their State-employer.  These "experts" from California should not be permitted to a violate Patel's civil, political, international or other rights by insisting that Patel is mentally unsound or suffering from any mental illness, because the experts fail to understand world reality or foreign affairs.

86.    The harm to Patel's career from all of the Defendants has been very severe and continues on an ongoing basis from these civil rights and other legal violations.  In particular, as an example, Patel (when he was in legal practice in California) was representing a lady named Dorette Wade during a sexual harassment case.  Just before the case was ready for trial, several of the other lawyers made the allegation that Patel was mentally ill.  They relied on the ER diagnosing Patel as moody in 2013.   Patel was then terminated from his employment at the request of these lawyers and a new counsel Griffin and Benner Boon (who told Ms. Wade to fire Patel since he was mentally deranged and ill).  Patel had actually obtained a settlement offer for Ms. Wade at one

1   million dollars or more.   But, once he was removed from the case because
2   lawyers threatened to tell the judge and jury that Patel was a mentally ill lawyer,
3   Ms. Wade lost the case at trial.   Her new lawyer, Griffin, was then disciplined
4   by the State Bar of California for misconduct.   But the point is that California
5   lawyers used this false and incorrect mental diagnosis from 2013 in 2017 and
6   2018 to avoid justice for Patel's client.   Ultimately, Patel voluntarily resigned
7   from the State Bar of California (with no charges pending) because he felt
8   unable to do his job.   Patel is hopeful that someday he can go back to being a
9   California lawyer and fighting for justice on behalf of clients like Ms. Wade
10  (who alleged that she had been sexually abused by her employer in order to
11  keep her job).   However, with California public officials continuing to maintain
12  that Patel is mentally ill and unsound, unscrupulous lawyers have every ability
13  to try and bias judges and jurors (with Patel having little ability to "unring the
14  bell" once he is labeled as ill and unsound).   Rather than Ms. Wade receiving at
15  least one million dollars, net of Patel's fees, she got basically nothing in the case
16  by 2018.   Patel, who is owed well over $200,000 in both fees (which includes
17  more than $50,000 of Patel's out-of-pocket costs), also got nothing.   This very
18  basic injustice is but one example of problems that Defendants caused Patel.

19          87.     From 2015-2016 and continuing into 2017 and 2018, Plaintiff
20  alleges damage and suffering to his reputation both as a professional and as a
21  former lawyer.   Moreover, Patel's own sincere desire to "make a difference" in
22  the community and for our society (in government or public service) has been
23  restricted and hampered.   Defendants Becker and Lynch, and their employer
24  Lewis, have repeatedly tried to portray Patel in a negative light.   Their goal and
25  objective have been to cause Patel injury and suffering so that Patel does not
26  have any ability to succeed.   Furthermore, they have been assisted by Turken
27  and his employers Eisner, Greenspoon and Dickstein, as well as associated
28  firms Inglis, Piper, Phillips and N&C in their efforts to create obstacles for Patel

and his career.  Using this false diagnosis from the ER in 2013 in completely unrelated proceedings or matters in which Patel is a counsel of record denigrates and basically eliminates (for many clients, courts and jurors) any ability for Patel to serve as a lawyer advocate in Los Angeles.

88.    Patel is informed and believes that another California firm, Silver, and their lead counsel, Sachs, led the effort to tell jurors and judges starting in 2016 and continuing well into 2018, that Patel is mentally unsound (and, correspondingly, should be considered unfit to practice law).   Rather than litigate the actual merits of cases and controversies, Patel has to instead contend with explaining first to people that he is actually not mentally ill, but rather labeled as such because he was getting a divorce from his wife in 2013 and his wife's family wanted Patel to be labeled as mentally ill (as they did for Bhatia's own father when her parents got divorced in 1980).  The fact that California public officials gave into Bhatia's demands because she is a mother and also because they disagree with Patel's political views and agenda is a continuing nightmare for Patel.  One would hope that after President Trump is re-elected in 2020, these California Defendants will stop their abuse.  But that is still almost two years away at the time of the filing of this instant Complaint.

89.    Perhaps the most brazen misuse of the faulty ER diagnosis was by Nemecek, Stone, Cole and their employer N&C.  These Defendants were well aware that Patel was in a divorce with Bhatia.  These Defendants represented one of Ms. Wade's counter-parties.  They sought to present jurors and judges with information about Patel's ER diagnosis from 2013 related to his divorce in a completely unrelated sexual harassment/abuse case in 2016 and into 2018 involving Ms. Wade in which Patel was formerly counsel of record.  But these Defendants were also at the same time representing one of Bhatia's own agents (Kristina Royce).  The fact that these Defendants brought in unrelated issues to disparage and harm Patel in a totally disparate proceeding speaks volumes to

how egregious the abuse of Patel's rights has been by all Defendants. The sad and difficult irony is that Patel was treated the way he was in 2013 because he wanted to run for Congress in 2014. The use of a government-sponsored ER diagnosis (which was involuntarily made against Patel's own requests to leave the ER in June 2013) in order to create obstacles in Patel's legal or political career (or otherwise) is an inexcusable offense to the very notions of our system of government representing *The People* <u>first</u>. When Patel pointed out some of these issues to Stone off the record in late 2016, she mocked Patel and suggested that he was acting looney when referring to the UDHR and international legal rights, calling such documents a "folly" which saddened and upset Patel greatly. Even though it has now been 75 years since World War II ended, it is sad that Stone can get away with such ridiculous statements.

90.  Plaintiff alleges that was hoping to campaign for Congress as a Democrat in 2014 based on the agenda of *Kids First*. Since that time, the national agenda that won in 2016 is *America First* (as has been articulated by our current and esteemed leader, the President of the United States and the Commander-in-Chief, Donald J. Trump). Even if Patel would have lost his campaign in 2014 due to the misdiagnosis and mistreatment by the ER in June 2013, there is no basis for Defendants to continue violating the rights of Plaintiff. Patel even asked many of the Defendants to correct the record in 2016, since after 2016 he hoped to run for State Assembly. But they refused.

91.  Plaintiff has been embroiled in some form of disputes with Overton and Cummings in 2017 and 2018. They continue to use Patel's incorrect ER diagnosis against him and suggest that they are upholding the law to do so. Patel was always willing to settle these disputes on the basis that they tender any monies spent on these matters instead to non-profit entities and charities that support the United States military or efforts at world peace. In the event that either Overton and Cummings were sincere in their position that they are just

doing their jobs rather than working in concert with public officials in California to harm Patel, then these Defendants should have gladly settled the matter. In other words, it appears to be more reasonable to spend thousands of dollars for the benefit of our troops and military and their efforts to promote peace around the world rather than California public officials and these Defendants instead choosing to spend that money on making the point (which appears to be their passion) that Patel is wrong and they are right. Even if Patel is somehow wrong *arguendo*, spending money to rebuke Patel rather than to support our troops and military and efforts at peace around the world is not proper. Moreover, these Defendants repeatedly cause delay and seek to make Patel's work difficult.

92.     Defendants Hinds and Meyer work for Hinshaw. They represented a client who Patel sued and agreed to settle the matter in 2018 so that their client would tender his funds to support the military, our troops and success of U.S. foreign policy towards peace around the globe. Yet, they subsequently changed their mind, and it appears at the direction also of Trope. Patel is informed and believes that Trope is an assistant or associate of Buzard, Wasser, Grotzinger and others. Hence, Defendants shifted gears now and continue to backtrack. They erect hurdles and constantly are now trying to prevent a resolution. When Patel pointed out that it might be a good idea to support the President and his policy of *America First* until the next election, the Defendants insulted him, rebuked him and again are using the same strategy of ostracizing him in order to prevent him from any success. Because these Defendants are able to rely on the incorrect ER diagnosis from 2013, they are able to continue to harm Patel and prevent him from being treated fairly. These Defendants, in particular, have little concern for the "bigger picture" of their conduct. They would rather argue with me about whether the Russians correctly or incorrectly are proverbially planting their flag at the United Nations rather than focus on any form of constructive solution for Americans in the future. It is little surprise that many

world leaders do not currently respect the United States, especially when lawyers like Hinds are the face of our system of laws and government. Hinds has no interest in anything other than proving that he is right, even if his being right is detrimental to his country. At some point, lawyers must accept that they have a sworn duty to defend the Constitution and the republic for which it stands, not simply the defense of the hours that they are billing for clients who violate the law (which appears to be a source of heavy profits for Hinshaw).

93.    Plaintiff alleges that President Trump's election in 2016 was one of the most controversial in recent national history. In particular, for California, it was one of the most lopsided votes ever in which the State was opposite to the national vote (i.e. 2/3 of California voters opted for Mrs. Clinton). Although Plaintiff was not a real Trump supporter in 2016, he accepted the reality of the election in 2016 after watching the first national debate in Fall 2016. Voters were able to accept that Donald Trump is a good father, even though he has been divorced (twice), because Mrs. Clinton essentially conceded that fact.

94.    Plaintiff alleges that he has been mistreated simply because he was a young minority male who was getting a divorce (that his ex-wife and mother of his two children opposed) and he wanted to campaign as a Democrat in 2014. California public officials and other Defendants still appear to feel the same way in 2019 as ER doctors and nurses did in June 2013 – i.e. that Patel (or any individual) is mentally ill to want a divorce before campaigning for any form of elected office. But, the voters across America, including the Democrats' own national candidate, rejected that position (that divorce is somehow wrong) in Fall 2016 during the presidential debates. Although President Trump is only the second divorced president in national history, California also will be led starting next week by a new Governor that is not only young, but also divorced as well as the product of a divorced childhood family. Therefore, Plaintiff requests that this ongoing discrimination cease by California officials and other Defendants,

1    and that the Defendants tender as damages any and all monies to support both
2    the United States military our troops and also any efforts at peace here at home
3    and around the world.  The position of Defendants is summarized apparently by
4    people like Amit who regularly posts his feelings on social media with such
5    pithy musings, such as "Fuck Trump" – which is not at all constructive or
6    productive dialogue in any manner whatsoever for anyone, <u>especially</u> for
7    Democrats of all people (most of whom still misunderstand the 2016 election).

8                            **GENERAL ALLEGATIONS**

9        95.    Plaintiff incorporates herein each and every allegation contained in
10   Paragraphs 1 through 94, inclusive and as stated above.

11       96.    The various Defendants in this case have acted with knowledge,
12   consent and in complicity with each other regarding at least some events and
13   acts/omissions alleged herein; these Defendants are jointly and severally liable
14   for wrongdoing that one/both of them perpetrated within the authority of the
15   other.  Defendants are, and continue to be, engaged in a civil conspiracy to
16   violate Patel's civil, international, human and political rights.

17       97.    The ER incident itself in June 2013 is the subject of a separate civil
18   lawsuit in State court between Patel and the doctors and nurses who were at the
19   ER.  This instant lawsuit is not a rehash of that case or the matters presented
20   therein.   Rather, this instant lawsuit concerns the fact that it is clear that
21   California public officials and other Defendants continue to maintain this
22   improper diagnosis and use it in order to cause harm to Patel and tarnish both
23   his legal, political and professional career.  As Patel has repeatedly pointed out,
24   he neither asked to be treated nor evaluated, and California public officials,
25   lawyers and law firms appear to be taking improper advantage over this
26   situation over the past several years.   The violations of Patel's rights are
27   ongoing and severe.   Put another way, even *arguendo* if the ER and its
28   doctors/nurses had arguably acted properly and complied with the standard of

medical/nursing care in 2013 by finding that Patel was acting moody on one particular night in June 2013, the continuing violations of Patel's rights since that date has been improper.  And these ongoing violations continue up to the present date, with severe and ongoing harm to Patel's career, his reputation, his ability to succeed and also to be an effective parent to his own children.

98.    Defendants, as California officials, lawyers and others, have been more focused on rebuking Patel and his career rather than at looking at the straightforward facts which demonstrate the egregious and ongoing violations of Patel's rights.  Their motivation is to constantly disparage and rebuke Patel and to create obstacles for him rather than letting Patel simply move on and be productive as a citizen and parent in our society.

99.    Plaintiff alleges that all Defendants have been motivated by animus and a desire to harm Patel's career, reputation, ability to parent and productivity. In particular, Defendants have been obstacles to Patel's success in being able to campaign, either for Congress or even State office, by maintaining this false premise that Patel is mentally ill because he wanted to get a divorce before running for elected office.  Even *arguendo* if the ER had a right to inquire into the reasons for the divorce, there was nothing mentally unsound in Patel wanting a divorce – Bhatia no longer supported Patel having any form of public service career, which is contrary to what she had promised Patel back in 2006.

100.   Plaintiff alleges that he has managed to survive, even though he is nearly bankrupt and was emotionally, financially and personally tortured by these California-supported Defendants through their ongoing and continuing civil rights abuses.  However, Patel was only able to survive by maintaining his steadfast faith in our system of laws, government and courts.  And, more than anything, it has been faith in *The People* and faith in America itself that has allowed Patel to keep going, despite myriad attempts by these Defendants (led by California bureaucrats) to cripple Patel.  As this case demonstrates, even for

Democrats, heeding the advice of the late-President Reagan (a former Democrat himself) is worthwhile: without proper checks and balances, such as the ones provided to all American citizens by this venerable Court, there is simply no limit to the ability of people like the Defendants to abuse power and ignore both common sense and reality because they can claim immunity from liability by working with, for, or in assistance of, the State of California.

101.   Plaintiff alleges that the Defendants are opposed to his campaign agenda of empowering average, regular Americans to succeed.  Because these Defendants are already wealthy or in privileged positions of power or income, they have little interest in Patel's agenda and are actually inimically opposed to his campaign agenda (which first started with *Kids First* in 2013, much to the chagrin of California family lawyer, but has evolved, following *America First*, to simply putting *The People First* after President Trump's term(s) in the White House).  Rather than amend Patel's medical records so that he could try to campaign for the future, these Defendants maintain the position that Patel was mentally ill and unable to function as a lawyer or any public official in the future.  However, Plaintiff currently has no real chance to be elected to <u>any</u> form of office due to the many travesties he has suffered for the past several years – that is obviously what these 50 Defendants wanted to take away from Patel (i.e. the opportunity to campaign and make some form of a difference), and they have succeeded until now.  But, even if Patel's career in government or public service is no more, his alleged desire in 2013 to make a difference should not be thrown astray.  Even if Patel's own life suffered for 6 years due to these 50 Defendants, Americans across all 50 States themselves should not suffer.  The People currently have a Democratic Congress, a Republican president, and hopefully, both will come together and find ways to work together so that everyone in America is better, not worse, off in the future.  President Trump, even though he was divorced twice, fortunately got divorced in New York, not

California. So, he was not involuntarily confined in a hospital and forced to undergo a diagnosis as being mentally ill due to his ex-wife's complaints about him getting a divorce or whatever. That is good news for Americans that other States in our country do not discriminate the way that California Defendants do.

102. Based on Plaintiff's observation, whether President Trump is mentally ill or not, Donald Trump is definitely a lot smarter than any of these 50 Defendants. Americans across all 50 States are very lucky to have him in the Oval Office rather than any of these other 50 Defendants (all of whom are an insult both to our legal system as well as our values across this country). For better or worse, and despite perhaps the tone of his daily *Twitter* messages, one thing is <u>certain</u>: President Trump has attempted since 2016 to "normalize" relations with the world's other true superpower (Russia) and he has managed to avoid global nuclear war, at least until 2019. That is an achievement that all Americans should be proud of, since alternatively, the Russians appear ready for all-out war everywhere (with the United Nations probably supporting Russia) if President Trump is removed from office before January 20, 2025 and Congress decides to confront Russia alone without him. Although 2/3 or more of California voters may disagree with that premise above, it does not mean that Patel is mentally ill or suffering from any mental disorder. Or, even if Patel articulated these types of views in 2013, that Patel was suffering from any mental issues back then. As the Russians themselves have stated, the world is safer with President Trump than it would have been with Mrs. Clinton as President. American voters themselves also clearly made the correct judgment in November 2016 on that basis alone. And continuing to brand Plaintiff as mentally ill is both degrading and insulting, and it has been utterly and completely idiotic ever since polls closed on November 8, 2016.

103. Patel could have been more useful in making some of these points in Congress (rather than courts), but since these 50 Defendants disagree and

1    instead decided that Patel lacked the abilities to do so, Patel did his best as a
2    wrongly-branded "mentally ill" Californian by making these points in courts.
3    Normally, this practice could arguably be frowned upon since courts do not like
4    to wade into *political questions* of sorts, but that longstanding tradition follows
5    from the normative premise that usually doctors in America do not diagnose
6    election candidates who are getting a divorce as mentally ill simply at the
7    request of their former spouse and her family. And, normally, 50 privileged and
8    affluent Defendants do not seek to unfairly profit therefrom. Nor is it normal
9    for these 50 Defendants to continue to spend their respective time and money on
10   defending themselves in this civil case rather than simply tendering all of their
11   assets (in full) to charities and non-profit entities that support the United States
12   military. The troops seem to be doing a very fine job in keeping Americans safe
13   and secure, despite the country's immense political divide today.

14       104.   Although Americans appear to be more divided politically than
15   ever before, they really should not be. Plaintiff alleges that, as a country, we
16   have much more in common than we do apart as citizens. And, to that end, as
17   inspired by President Obama in his *Farewell Address* in January 2017, Patel is
18   here in this Court as just one regular, individual citizen – a native Californian
19   who despite years of injustice, is still making a difference as an individual.
20   Patel seeks, by way of this Complaint, his damages in the form of monies to
21   support our military and troops for the overall well-being of our country, all of
22   which is entirely consistent with the national policy of putting *America First* as
23   President Trump requested of all Americans in January 2017. These objectives
24   are also in the best interests of Patel's own minor children, which is what
25   precipitated his original campaign vision in 2013 of putting *Kids First*. And,
26   finally, the victory in this case truly belongs to *The People First*, who deserve a
27   government and legal system which serves all of them as individual citizens, not
28   one that just caters to the privileged few and wealthy elites (like Defendants).

**IN PLAINTIFF'S OWN WORDS**

105.   Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 104, inclusive and as stated above.  The following below is presented by Plaintiff in his own words:

106.   It really is sad and unfortunate for me that I even have to file this civil case.  Because it reminds me just how awful the past few years of my life have been, because of the acts and omissions of these 50 Defendants. Nevertheless, after the passing of the late President Bush about a month ago, I found the courage within myself in December 2018 to file this case and to seek damages to be awarded that I am due to be paid by these Defendants for the benefit of our troops, our military (and efforts that they make for peace, both at home and abroad for the benefit of everyone in our country).  Even though I have spent most of my life as a Democrat or independent voter, it really is from President Bush that I drew inspiration for filing this case.  His passing reminded me of who I was back in or about 1990 when I was just a teenager, barely finishing junior high school in Simi Valley, California and looking for direction in my life.  I recall vividly his speech about "points of light" and about the responsibility that each of us has an American citizen to try and make our overall society just a little bit better in our own respective way.   President Bush's funeral in December 2018 reminded me of why I decided to go to law school, of what I hoped to achieve, which was to make a difference and to do and be my best as an American in whatever I set out to do in my life.  I always hoped to succeed, and that was always something that I was able to do on my own (without help) until an ER in June 2013 wrongly decided that I "needed to get help" because I was getting a divorce.  But I never got the help that I needed towards making this country a better place and towards ensuring America's success in the years ahead.  Instead, corrupt Defendants relied on the ER's errors and continue to harm my life and repudiate my ability to succeed.

107.   As is alleged above, there is a separate civil proceeding in State court against the ER doctors and nurses and that specific incident in June 2013. That matter is presently on appeal.  This case here in this Court is unrelated. This case focuses on the misuse of that misdiagnosis by these 50 Defendants and the efforts they undertook to cause harm to my career, professional standing, reputation and abilities by their ongoing and continued violations of my civil, political, legal and international rights.  All of that was made possible by State actors led by Miller/Klohn as well as Hendey/McCullough who continue to (in apparent blind belief) wrongly insist that their actions and omissions are legal and fair.  The ER screwed up, plain and simple.  But, these 50 Defendants took the mistakes of the ER and have wrongly profited from them by continuing to perpetrate this abuse upon me so that I cannot succeed in southern California (where I was born and raised and where my children reside).

108.   I am not here asking for money for myself.  Once my medical records are corrected, I am capable of succeeding on my own without help.  But, as I was wrongly treated over the years by these 50 Defendants and unable to either properly parent my kids nor able to complete any form of real public service by campaigning in an election, I am here seeking damages for myself that will instead be used to better what I could not achieve.  This money will be used to support our troops, our country and our efforts at world peace on a sustained basis, regardless of political affiliation.

109.   Over these past few years, I lost basically everything, since every time I tried to move forward starting July 2013, I was reminded by one or more of these 50 Defendants that I am supposedly mentally ill (even though I am not). It is honestly reprehensible that any of these 50 Defendants would in any way use the fact that I was getting a divorce in 2013 or that I wanted to run for Congress in 2014 as a basis to discriminate against me, retaliate or violate my rights in any manner whatsoever.  The fact that ER doctors and nurses messed

up is already part of a different State court lawsuit.  This case is about 50 other Defendants who continue to harm my career, reputation and ability to parent.

110.  I avoided physical impairment and also managed to avoid bankruptcy (since my friends and family kept me afloat), but otherwise, I have endured just about every wrong that someone like me could endure for the past few years.  I went from being a well-educated lawyer in 2013 (from Berkeley and Harvard) and successful professional (living in a $5 million home in Santa Monica) and of the right civic mindset (running for Congress in 2014 in order to make a difference) to being humiliated, mocked and unfairly treated over the past few years in many ways – from lawyers making fun of me, to people calling me "crazy" or "mental" to judges not even taking me seriously anymore because so many of these Defendants are more powerful and established than I am in the local legal community.  Even for my kids, it is very hard for them to endure other kids and families making fun of them and treating them like they are some "dumb brown kids" who have a "mentally ill" father.  Last year, I might have been upset, or disappointed or even cried when thinking about this stuff, but today, with President Trump as our leader, I draw inspiration from him.  He is perhaps a lot stronger than me at simply calling a "spade a spade" – California is "totally out of control" and these 50 Defendants are corrupt, inept, and a clear example of abuse of power in California by people in power.

111.  My parents were legal immigrants to this country from India.  They worked hard, they both served in the private sector and did the best that they could since arriving here in the early 1970s. My dad is a retired rocket scientist now and worked on satellites and space shuttles in aerospace engineering.  My mom is a retired accountant and worked in the defense sector.  Even though my parents split up when I was 10 years old, it was never a problem in my life that they were divorced – they were both there for me when and how I needed them as I grew up.  But they also never went to court to litigate (thankfully) since

they focused on what was best for me (and my sister) and they both understood that each of them had equal rights to the children. Obviously, my ex-wife and her family are different. She was raised by a single mom on food stamps who publicized that her dad was mentally ill so that he would stay out of their lives.

112. The fact that my ex-wife is not only permitted, but has also effectively been encouraged by Californians, to repeat her own mother's parenting is unfortunate. But she is neither a defendant nor the issue in this instant case – rather, the behavior of these 50 Defendants is at issue. The fact that the fact the ER labeled me as mentally ill at her request is not fair, but I sued in State court for those issues. The issue in this case is that 50 Defendants have continued to use this wrong and improper incident to their advantage and against me on an ongoing and continuing basis after the ER incident occurred.

113. The only proffered basis from the ER for diagnosing me as mentally ill is that my wife and her family stated I wanted to get a divorce and that I was acting "erratic" or "odd" since I was planning to leave my private sector work in 2013 and run for Congress in 2014. Not only is that not a basis for a diagnosis of mental illness, it is downright evil for these 50 Defendants to then use that inept diagnosis (which was made in the middle of the night in June 2013 by a 20-something year old resident doctor at UCLA who could not understand why I would divorce my wife and mother of my kids since I was apparently deemed by the ER to be very lucky to have such a beautiful and highly-successful wife and two lovely children). It should not require Donald Trump or a judge or a jury to explain this situation to anyone, but apparently after his inauguration in 2017, it is hopefully clearer. It is rather simple once we put away all the *legalese* and look at the simple facts. My ex-wife broke her basic promise to me from 2006, and I decided that I wanted a divorce.

114. The fact that this late-night ER incident was used against me by other lawyers or courts or California officials is unfair. I was unable to succeed

1    in my career in any measure by 2016-2017.  A large settlement that Ms. Wade
2    and I should have received was instead botched by Griffin who actually agreed
3    with the other opposing lawyers that I was mentally ill.  But, despite Griffin
4    getting me thrown off the case, Ms. Wade ultimately suffered because Griffin
5    lost the case, got her basically no money and was then formally disciplined by
6    the State Bar of California.  More than my client just losing all the money and
7    my suffering a cash burn from my out-of-pocket costs that were also never paid,
8    I am upset that people are not following the law and still getting away with it.
9    When I complain, nobody listens, because it is stated that I am "mentally ill"
10   before I can explain how or why that came about in June 2013.  I explained all
11   this stuff to many people, like Villebro and Yuk as well as Lynch.  But, as I
12   point out above, a lot of these people worked together against me, by just
13   keeping with the falsity proffered by California public officials – i.e. "he is a
14   divorced man with children, like Donald Trump, and his ex-wife states he is
15   mentally ill, so that must be correct."  It is really unfair that I still get mistreated
16   because I was getting a divorce.  Even my children understand the basic nature
17   of the divorce – it really is quite simple.  My ex-wife decided that she was the
18   most important thing in the world since she had two children.  She became more
19   important than the kids and more important than me.  I was willing to accept
20   that at some level, but I was never willing to accept that she was more important
21   than my career and the promise that she made back in 2006 to support me in my
22   career.  I did not divorce my ex-wife for unsound reasons or because I am ill or
23   any other such innuendo.  Rather, I divorced her because starting in 2012 she
24   consistently and always put herself first, the kids second, myself third, and our
25   country an absolute and dead-last.

26       115.  Rather than being upset at the ER forever for acting stupid, I finally
27   tried to move on in 2017 by leaving California.  I resigned from the Bar since I
28   am not able to practice properly when I have to first fend off allegations of

mental illness before discussing anything substantive with other California lawyers or courts. I moved to Nevada and tried to start over in 2017. Even though I love California and was sad at first to leave, I learned to be happy in 2017. In fact, I loved Nevada after a while, the people were so nice, they were friendly, they always were upbeat and nobody cared who won the election in 2016 since Nevadans generally appeared to be of the mindset that we were all Americans first and Democrats and Republicans second. Nevadans put their Country First. That was a refreshing change for me from southern California.

116. But, eventually my good days in Nevada faded, since I had to come back to California since my children were suffering in my ex-wife's care alone. My son tried to commit suicide and was apparently physically fighting with his mom all the time. My daughter started talking about death and how much she hates her mother. But divorce lawyers and courts accused me of abandoning my kids, saying that I was still suffering mental problems and my ex-wife jumped on that "parade" (which it was for her) in the ensuing co-parenting counseling sessions where she would constantly gloat "See, I told you he's worse than Donald Trump" and point out that I had been diagnosed as being mentally ill by the ER in 2013. Her apparent claim was that I was "bipolar" for leaving the State and then deciding to come back because she was on the verge of ruining both children's lives (even though courts continue to award custody of the kids to her because I was diagnosed as moody and suffering mental issues in 2013).

117. I never abandoned my children in 2013 or in 2017 – both of them know that. I only abandoned their mother, which is what is known as divorce. Apparently, California public officials and lawyers continue to agree with her because she is a woman and a lawyer. But, regrettably for these 50 Defendants, the facts and reality do not agree with my ex-wife. She cannot simply rest her fate on being a lawyer and a woman forever. Just as the facts and reality also (sadly) did not agree for Mrs. Clinton on Election Night 2016 (who I voted for,

by the way, in 2008, but not in 2016 since her only campaign agenda is or was essentially that "I'm a Woman, so please Vote for Me or you are sexist like Donald Trump").  Even against Donald Trump, it does not take a genius to figure out that Mrs. Clinton's entire election campaign in 2016 was a joke.  It is clear that views such as the above confirmed for a lot of the 50 Defendants that Patel is actually "mentally ill" and "needs help" – however, after polls closed on November 8, 2016, this nonsensical view that the 50 Defendants continue to adopt really is starting to be anything but a joke.  I have explained on many occasions to many of these Defendants why this instant situation needs to be remedied.  However, all these people want to do is proverbially keep "burying their heads in the sand" and they hope that the Court will also join them and trudge down the "rabbit-hole" of their errors.  It is precisely because of things like inept government that half of America voted for Trump in 2016.  Because, in general, many voters thought the system was overrun by special interests, with little accountability or oversight, and run only to benefit privileged interests.  The conduct of these 50 Defendants in this case is but one small example of that overall corruption which affects all of American society today.

118.  As explained above, I have lost almost everything possible in my 40 years that I reasonably could have.  Other than my faith in our system and in this country and its people.  I am still here fighting this case, because I would like to believe that the system still works for all Americans, not just the few who can afford expensive lawyers and buy access to elected officials.  Chief Justice Roberts recently said that we do not have Obama or Bush judges, that we only have an extraordinary group of dedicated judges doing their level best to do equal right to those appearing before them, and that independent judiciary is something that we should all be thankful for in this country.  As for me, I am hopeful that even in the age of Donald Trump and the divisiveness of his presidency that courts will actually abide by how Chief Justice Roberts

1 described them.  However, it is worth remembering that the President also has a

2 duty of his own to uphold, preserve, protect and defend the Constitution.

3      119.  The specific claims set forth below are alleged in the alternative,

4 where applicable.  The gravaman of the Complaint is the violations of civil

5 rights and associated misconducted that is alleged against the 50 Defendants

6 who have perpetrated these grave injustices upon me with the assistance, advice,

7 cooperation and participation of State actors.  There may be other claims under

8 State law or federal law that would be derivative, but the principal grievance

9 articulated in this basic Complaint is for violation of federal civil rights whereby

10 State officials and other associated co-Defendants deprived me of my many

11 rights and privileges/immunities under applicable federal, international and also

12 California law.  The entire conduct of the Defendants has been akin to depriving

13 me of my ability to succeed in any manner in California, resulting in my

14 displacement from my home State.  For that reason, I moved to Nevada in 2017

15 and tried to restart life there, but I moved back in 2017 and 2018 since my

16 children required me to be back here in California.  However, I am unable to

17 find much work, cannot get my career back on track, am still not able to practice

18 law in California (with this false mental illness still  out there in the local legal

19 community) and I have been forced to suffer constantly due to the continuing

20 and ongoing abuse by these 50 Defendants who would rather insist that I am

21 mentally ill.  I simply wanted to campaign for the best interests, not only of my

22 children, but all children in America in the next election.  I hope that all kids in

23 this country have the best chance to succeed, not just children like my own who

24 were lucky enough to be born to two very well-educated and successful parents

25 at the time.  Of all people, I thought Bhatia, who was raised by a single mother

26 on food stamps, would understand and support my agenda (as she had been in

27 the past when we first got married).  And I also believed that in a State that is as

28 progressive as California, most officials would support my agenda.  It is not a

partisan agenda, but rather a policy agenda focused on empowering the next generation of Americans so that they can succeed in an increasingly globalized and competitive economy.  However, I never got a chance to make my case to voters in 2014 or 2016 (or in 2018) because of these 50 Defendants who instead ruined my life.  Californians should remember that no-fault divorce originated in California under then-Governor Reagan about 50 years ago.  It originated that way because his first wife wrongly accused him of mental cruelty in order to get a divorce from him.  The fact that my ex-wife also wanted to brand me as mentally ill is not a surprise, but the fact that 50 Defendants then used, and continue to use, such a faulty ER diagnosis against me is a shock.  Once the Court enters the judgment against the Defendants and I am able to also clean up my erroneous medical records and rescind the false insinuation that I am mentally ill, I would be open and willing to consider running in a future State, local or national election campaign after 2020.  But, until then, since President Trump is actually smarter than most other people in government, I sincerely wish him the best of luck.  He is likely to be reelected in 2020 (since the Democrats have no vision or real agenda other than opposing him), so I might as well support the President this time since that would be best for our military.

120.   I would like to close here by thanking all of our troops and veterans for their service to our country.  It is an honor for me to be able to file this instant Complaint and to be of service to all of them in the future.

**FOR A CLAIM OF**

**VIOLATION OF FEDERAL CIVIL RIGHTS**

**AGAINST ALL DEFENDANTS**

121.   Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 120, inclusive and as stated above.

122.   Defendants have under color of statute, ordinance, regulation, custom, or usage, of the State of California, subjected, or caused to be subjected,

Plaintiff (a citizen of the United States), to the deprivation of rights, privileges, or immunities secured by the Constitution and its laws thereunder.   Therefore, Defendants are be liable to Plaintiff for the relief requested herein.

123.   Defendants also conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of California, with intent to deny to Plaintiff (a citizen of the United States) the equal protection of the laws.   Defendants conspired to injure Plaintiff and prevent enforcement of his rights as to the equal protection of applicable laws as a member of a specific class of individuals.

124.   The violation of Patel's federal civil rights under 42 U.S.C. § 1983 and § 1985 has been ongoing, continuing and remains persistent through the date of this Complaint.   In addition to violating Plaintiff's civil rights under federal law, these Defendants have also violated his California civil rights as well as his protected rights, constitutional rights and political, legal and human rights under international law (including his rights under the UDHR and other applicable international treaties and legal agreements).   In addition, the Defendants have caused Plaintiff to suffer loss to his income and career. Defendants also ignore the Universal Declaration of Human Rights (UDHR) and international law which states that simply following domestic laws is an insufficient basis or excuse following World War Two to not comply with basic human rights that apply to all world citizens.   Even for these rich, privileged or powerful (such as these instant 50 Defendants), Justice Gorsuch stated the applicable maxim in his 2017  confirmation hearings: nobody in this country is "above the law" (not even lawyers or public officials).

125.   Defendants have induced breach of contracts that Plaintiff was a party to, and also sought to interfere (either negligently or intentionally) with Patel's ability to gain prospective economic advantage.   The tortious interference has been designed to cause injury to Patel.   These Defendants are

1   engaged in fraudulent, unlawful, unfair and improper business practices. This

2   deception has been designed to make Patel's life as difficult as possible and

3   impede his ability to succeed in his career, as a parent or in any election

4   campaign. These unfair practices violate norms of California public policy and

5   are immoral, unethical, oppressive, unscrupulous or substantially injurious to

6   consumers. The practices are likely to be injurious to other people in California.

7   126. Plaintiff seeks damages against all Defendants. Furthermore,

8   Plaintiff seeks declaratory, injunctive and equitable relief and decrees as

9   allowed by applicable law. Plaintiff has been forced to live in fear, subjugation

10  and humiliation, suffering due to Defendants, who manipulated the ER incident

11  following 2013 in order to serve their own selfish ends continuing into 2019.

12  The actions of Defendants were committed with fraud, oppression and malice

13  and require an award of exemplary or punitive damages against the Defendants.

14  127. Defendants caused injury through their despicable, wanton and

15  willful conduct that showed an utter disregard to the rights of Plaintiff. They

16  inflicted serious and also intentional distress upon Plaintiff, causing him severe

17  emotional harm. Defendants have also been negligent. They willfully, and with

18  reckless and depraved disregard for Plaintiff caused such outrageous and

19  wanton conduct that was directed at Plaintiff, engaging in fraud, deception and

20  other various forms of misconduct designed to punish Plaintiff. Patel suffered

21  severe emotional distress (including mental distress, suffering and anguish as

22  well as fright, anxiety, nervousness, worry, shock, fear, humiliation, loss of

23  reputation, pain and suffering and indignity). The breach by Defendants was the

24  proximate cause, but for which Plaintiff would not have suffered injuries. Such

25  injuries were suffered by Plaintiff, and hence, Plaintiff incurred damages.

26  128. Defendants have repeatedly deceived and defrauded Plaintiff and

27  made promises about material matters. Defendants' promises, without any

28  intention of performance, were made with the intent to defraud and induce

Plaintiff to rely upon the same to his detriment.  In justifiable reliance upon Defendants' conduct, Plaintiff was induced to act (or not act) as stated in the preceding sentence, which was detrimental to Plaintiff.  Because of Plaintiff's reliance upon Defendants' misconduct, Plaintiff was damaged.  Plaintiff is also continuing to suffer injuries from the acts and omissions of these Defendants.

129.  Defendants intentionally and willfully, through their fraudulent conduct, also deceived Plaintiff with the intent to induce Plaintiff to alter his position to his injury and risk, and Plaintiff was thus deceived and damaged.

130.  Defendants also made misrepresentations to Plaintiff that were false, and the truth was different than Defendants were representing to Plaintiff. When Defendants made the representations to Plaintiff, Defendants knew that such representations were false.  Defendants made the representations with the intent to defraud and induce Plaintiffs to rely upon the same.  Because of Plaintiff's justifiable reliance therefor, Plaintiff was significantly damaged.

131.  Defendants concealed or suppressed material facts to Plaintiff that they were bound to disclose to Plaintiff.  Defendants also concealed or suppressed material facts by telling Plaintiff other facts to mislead Plaintiff and prevent Plaintiff from discovering the concealed or suppressed facts. Defendants concealed or suppressed these facts with the intent to defraud and induce Plaintiffs to rely upon the same.  Plaintiff was unaware of the concealed or suppressed facts and would not have taken the actions if Plaintiff had known the facts.  In justifiable reliance upon Defendants' conduct, Plaintiff was induced to act to his detriment, and because of Plaintiffs' justifiable reliance upon Defendants' conduct, Plaintiff was damaged and continues to suffer.

132.  Plaintiff is informed and believes that in perpetrating the torts, acts and omissions alleged herein, Defendants acted pursuant to their conspiracy and the agreement and understanding that they had, at various times, following the ER incident that occurred in 2013.  Each of them has or did conspire with State

officials in order to harm Patel's career, his productivity and ability to succeed. Defendants have continued to operate under that conspiracy.  Each of the Defendants is responsible for damages suffered by Plaintiff, because all Defendants worked together to deprive Plaintiff of his rights, his property and access to his family and well-being.  As a proximate result of the wrongful acts and omissions of Defendants, Plaintiff have been substantially damaged.

133.   Plaintiff further alleges that Defendants denied him full and equal advantages, privileges and services because of his sex, race, ancestry, national origin, alleged medical condition and marital status.  Defendants also denied, aided or incited a denial of, discriminated or made a distinction that denied, full and equal advantages, privileges and services to Plaintiff.  A motivating reason for Defendants' conduct was its perception of Plaintiff's sex, race, ancestry, national origin, alleged medical condition and marital status.  Plaintiff was harmed by this misconduct of Defendants.  The misconduct of Defendants was a substantial factor in causing Plaintiff's harm, which resulted from the repeated, ongoing and continuing violations of Plaintiff's civil rights.

134.   The declaratory relief and judgments sought will have the effect of helping to ensure Plaintiff can succeed in the future without harm or obstruction from the Defendants.  The power of this Court is needed to seek remedies to prevent more violations of the Constitution and other applicable laws.

## DEMAND FOR JURY TRIAL

135.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and any and every other applicable law or rule, Plaintiff hereby demands a trial by jury in any and all matters that are discussed in this instant Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered as follows:

1.    In respect of any and all monetary damages (e.g. any and all monies lost by Plaintiff, monies owed to Plaintiff for work performed lost

income, emotional distress, pain and suffering, lost future income, disruption in the lives of Plaintiff and his children, harm to Plaintiff's reputation and other injuries, nominal and statutory damages for violations alleged, any and all general, special, consequential and compensatory damages, punitive and exemplary damages, and any and all pre-judgment and post-judgment interest upon damages at the maximum rate permitted by applicable law), Plaintiff requests that the following monetary judgment be entered against each and every Defendant in this proceeding:

For a monetary judgment against each and every Defendant consisting of the total sum and value of such Defendant's total assets, to be tendered and delivered forthwith for the benefit of non-profit entities or charitable organizations that support the United States military and/or other efforts at world peace (in the alternative, and at the Court's discretion, judgment may instead be entered in favor of any other suitable forms of non-profit entities or charitable organizations that support the nation's agenda as is set forth by the Congress of the United States pursuant to Article I of the Constitution and the President of the United States pursuant to Article II of the Constitution);

2.     For any and all appropriate equitable, declaratory and injunctive relief and remedies;

3.     For all costs of this Complaint and lawsuit related thereto;

4.     For attorneys' fees (if any) in connection with or related to this Complaint, to the maximum extent permitted by applicable law; and

5.     For such other relief as this Court deems just and proper.

Respectfully Submitted,

Dated: January 4, 2019                 By: _____

ANTHONY A. PATEL
Plaintiff (Pro Se)

COMPLAINT